**FIRESTONE TIRE & RUBBER CO., Plaintiff-Appellant, v. CENTRAL NATIONAL BANK OF CLEVELAND, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22220. Decided February 25, 1952.

46

Jones, Day, Cockley & Reavis, Cleveland, for plaintiff-appellant.

Arter, Hadden, Wykoff & VanDuzer, Cleveland, for defendant-appellee.

(HUNSICKER, PJ, DOYLE, J, of 9th District and NICHOLS, PJ, of 7th District sitting by designation in 8th District.)

## OPINION

By HUNSICKER, PJ.

This is an appeal on questions of law from a judgment of the Common Pleas Court of Cuyahoga County, Ohio.

In June, 1946, the Firestone Tire & Rubber Company, herein called Firestone, entered into a contract with Stan Wood Products Inc., herein called Stan Wood, whereby Stan Wood agreed to manufacture sleds for Firestone, and, upon instructions from Firestone, ship the sleds to the various warehouses of Firestone.

Stan Wood had a loan agreement with Central National Bank of Cleveland, herein called Bank, whereby Stan Wood, by assigning its accounts receivable to the Bank as security was able to borrow money from the Bank. This loan agreement was executed, and all modifications thereof were consummated prior to any transactions between the Bank and Firestone.

On November 5, 1946, Stan Wood borrowed from the Bank $10,377.60 and assigned to the Bank, as security therefor, invoice No. 1867, dated November 4, 1946, billing Firestone for 1100 sleds allegedly shipped by Stan Wood to Firestone, and invoice No. 1868, dated November 4, 1946, billing Firestone for 1250 sleds allegedly shipped to Firestone. Each of these invoices were accompanied by a uniform straight bill of lading, showing a claimed shipment of the sleds to Firestone.

These bills of lading and copies of the invoices covering the alleged shipments were then sent by Stan Wood to Firestone.

On November 21, 1946, Firestone paid, by check issued direct to Stan Wood, the amount of $6831, allegedly due upon invoice No. 1868. Stan Wood delivered this check, properly endorsed, to the Bank, and the Bank credited $5520 to the loans of Stan Wood, which loans were not secured by invoices to Firestone, and the balance was deposited to Stan Wood's checking account and then withdrawn by Stan Wood.

The Bank, by letter dated November 18, 1946, notified Firestone of the assignment to it of the Firestone accounts. Thereafter, by an exchange of correspondence between the Bank, Firestone, and Stan Wood, the fact that the Firestone accounts were assigned to the Bank was acknowledged.

On November 29, 1946, Firestone, by its check in the amount of $19,148.66, paid the Bank for the Stan Wood invoices Nos. 1867 and 1876. Of this amount so paid $15,473.66 was credited against Stan Wood loans, not all of which were secured by invoices to Firestone. The balance of $3,675 was deposited to the Stan Wood checking account and later withdrawn by Stan Wood.

All of the loans to Stan Wood which were based on invoices to Firestone, were made prior to the receipt by the Bank of any payments made by Firestone in reliance upon such invoices and alleged uniform straight bills of lading.

The Stan Wood invoices Nos. 1867, 1868 and 1876 were false, fraudulent and fictitious. The bills of lading covering alleged shipments of the sleds covered by those invoices were false, fraudulent and fictitious. The signature of the contract carrier appearing on each of such bills of lading was either a forged signature or the purported signature of a person who did not exist.

Neither the Bank nor Firestone knew of the false, fraudulent and fictitious character of the invoices or the bills of lading. No sleds were received by Firestone from Stan Wood, nor did Stan Wood ever ship to Firestone any sleds, under these invoices.

On November 23, 1946, Stan Wood shipped to Firestone 800 sleds which were received by Firestone on December 3, 1946. Firestone received no invoice nor made any payment for these 800 sleds.

On February 7, 1947 Stan Wood was adjudicated a bankrupt. Firestone filed a proof of claim in such bankruptcy proceedings, setting out, in such proof of claim, the amount paid for merchandise not received, but giving credit to Stan Wood for the 800 sleds received by Firestone on December 3, 1946. The claim of Firestone against Stan Wood, bankrupt, was allowed, but Firestone received no payments from the bankrupt's estate.

On May 12, 1948, Firestone filed an action in the Common Pleas Court of Cuyahoga County, Ohio, against the Bank, alleging that the payment of the amounts due under the false, fraudulent and fictitious invoices Nos. 1867, 1868 and 1876 were made by Firestone to the Bank "under a mistake of fact induced by the fraudulent and false representations of Stan Wood, the assignor of the defendant (Bank) and that the defendant (Bank) has been unjustly enriched by reason thereof."

Firestone, in such action, prayed for judgment against the Bank in the "amount of $25,979.66 together with interest thereon from the 21st day of November, 1946 * * *." The trial court rendered a judgment in favor of the Bank, and it is from such judgment that an appeal on questions of law is before this Court.

Firestone, the appellant herein, says that the trial court committed error prejudicial to the substantial rights of Firestone as follows:

"1. The Court of Common Pleas erred in not admitting evidence offered by plaintiff.

"2. The judgment of the Court of Common Pleas is contrary to law.

"3. The judgment of the Court of Common Pleas is manifestly against the weight of the evidence and is not sustained by any evidence.

"4. The Court of Common Pleas erred in not entering a final judgment for the plaintiff as prayed for by it in its petition herein.

"5. The judgment of the Court of Common Pleas should have been against the defendant and for the plaintiff.

"6. The Court of Common Pleas erred in not admitting evidence offered by the plaintiff.

"7. The Court of Common Pleas erred in overruling the plaintiff's motion for a new trial.

"8. Other errors apparent on the face of the record."

The first question which should be considered in this appeal is: Did Firestone, by filing its claim in the Stan Wood bankruptcy proceedings, elect the remedy it wished to pursue, so as to preclude any future action against the Bank?

The Supreme Court of Ohio, in the case of **Norwood v. McDonald, 142 Oh St 299**, at **p. 315**, said:

"The doctrine of election of remedies is applicable only where, at the time of election, there are available to the litigant for the assertion of a single right, two or more coexisting remedies which are repugnant to and inconsistent with each other."

The leading case in Ohio, and the one most frequently cited on the doctrine of election of remedies, is **Frederickson v. Nye, 110 Oh St 459**. The court there said, at **pages 466 and 467**:

"An election of remedies or forms of action or procedure does not necessarily involve a choice as between two existing substantive rights. A form of action or remedy is but a means of administering justice rather than an end in itself. There is, therefore, a marked distinction between an election between remedies or forms of action and an election of remedial rights. One goes to the substance and the other to the form. Where the remedies afforded are inconsistent, it is the election of one that bars the other; where they are consistent, it is the satisfaction which operates as a bar. It is the inconsistency of the demands that makes the election of one remedial right an estoppel against the assertion of the other, and not the fact that the forms of action are different.

"* * *

"Now, a remedy based on the theory of an affirmance of the contract, or other transaction, is inconsistent with a remedy arising out of the same facts based on the theory of its disaffirmance or rescission, so that the election of either must be an abandonment of the other."

At the time Stan Wood was adjudicated a bankrupt, the Bank, so far as the debt arising out of the assigned Firestone invoices was concerned, was paid. Certainly at that time the Bank was not ready to concede that it had obtained any money to which it was not rightfully entitled. The Bank could not and would not file a claim against the bankrupt's estate—it did not then have any such claim, arising out of the transactions herein, to present.

Firestone, on the other hand, had a claim for non-delivery of sleds, which sleds had already been paid for. If it failed to file its claim, and a dividend to general creditors had been paid, the Bank, in the instant case, could rightfully demand a credit for the amount which Firestone would have received.

Firestone would have been derelict in its duty if it had failed to pursue the bankrupt estate, for, under the circumstances of this case, it, and it alone could file the claim in bankruptcy court.

Under the facts of this case, there was no election of an inconsistent remedy, and hence no such election of remedies, as would preclude the action thereafter taken against the Bank.

The next question which we must consider is: Is the Bank a holder in due course of the two checks received from Firestone?

The first check which Firestone issued in payment of a false, fraudulent and fictitious invoice was in response to invoice No. 1868. On November 21, 1946, Firestone issued direct to Stan Wood its check in the amount of $6831.00 in payment of such invoice. Eighty percent of the amount of this check, or $5520.00 was credited against loans to Stan Wood, which loans were not secured by invoices to Firestone, and the balance, or $1311.00 was deposited in Stan Wood's account. The amount so deposited was withdrawn by Stan Wood on November 30, 1946.

It must be remembered that, prior to the time when the check in payment of such invoice No. 1868 was issued by Firestone to Stan Wood, the Bank had notified Firestone that such invoice No. 1868 had been assigned to it, but Firestone had not received from Stan Wood a notice of the assignment of this invoice to the Bank.

Under such circumstances as are thus set out, is the Bank a holder in due course of the check given to Stan Wood in payment of invoice No. 1868?

Sec. 8157 GC, defines a holder in due course, and subsection 4 therein says:

"4. That at the time it was negotiated to him he had no

notice of any infirmity in the instrument or defect in the title of the person negotiating it."

It certainly is conceded that, at the time Stan Wood indorsed this check and gave it to the Bank, there was no notice to the Bank of "any infirmity in the instrument or defect in the title of the person negotiating it."

**Sec. 8160 GC** defines the conditions under which the title is defective, and §8161 GC says:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating it, the person **to whom it is negotiated must have had actual notice of the defect** or knowledge of such facts that his action in taking the instrument amounted to bad faith." (Emphasis ours.)

**Sec. 8135 GC** defines "negotiation."

We therefore conclude that, as to the check issued to Stan Wood, in payment of invoice No. 1868 in the amount of $6831.00 the Bank is a holder in due course, and Firestone cannot assert that such check was a defective negotiable instrument in the hands of the Bank.

The next question which must be considered is: Is the Bank, as payee of the check issued in payment of invoices numbered 1867 and 1876 a holder in due course?

This latter check, in the amount of $19,148.66 was issued direct to the Bank after proper notices of the assignment of invoices had been exchanged between the parties.

The authorities in the United States are in conflict as to whether a payee of a negotiable instrument may be a holder in due course. 169 A. L. R. 1455, and authorities there cited.

While Ohio has never, so far as we have been able to discover in the reported cases, taken a definite stand on this question, the tenor of the few reported cases which do discuss the subject lean toward the view that such payee cannot be a holder in due course. **29 O. Jur. Negotiable Instruments, Sec. 180, pg 955,** and cases there cited.

In the instant case, the Firestone check, in payment of invoices numbered 1867 and 1876, was issued to the Bank, not "negotiated" to it. We therefore determine that, since the Bank did not receive the check here in question by negotiation as defined by the negotiable instruments law of Ohio, it was not, as to such check, a "holder in due course."

The next question which we consider is: Is Firestone entitled to recover money paid to the Bank by the check issued to the Bank in payment of invoices numbered 1867 and 1876?

The appellant says that the instant case comes within the general rule that money paid upon a mistake of fact, and without consideration, may be recovered by the one making such payment.

Neither the Bank nor Firestone knew of the false, fraudulent and fictitious character of the invoices and bills of lading until some time after Firestone had made the payments here in question. It is also a conceded fact that the Bank advanced its money on the assigned false invoices prior to the payment by Firestone to the Bank.

It is thus to be seen that the security the Bank had by way of assignment of invoices Nos. 1867 and 1876 was predicated upon fraud perpetrated upon it by Stan Wood. The Bank thus had only the promise of Stan Wood to pay its loan and no valuable security.

Ohio has consistently followed the general rule that money paid upon a mistake of fact, and without consideration, may be recovered back.

**Ellis & Morton v. Ohio Life Ins & Trust Co., 4 Oh St 628; Wooley v. Staley, Treas., 39 Oh St 354; Village of Indian Hill v. Atkins et al., 153 Oh St 562 at p. 566; Union Trust Co. v. Severhoff, 3 Abs 210.**

A collation of the authorities on the specific question involved in the case now before us, is found in 159 A. L. R. 487. From an examination of these authorities, we discover a considerable conflict in the reported cases on this subject.

Should the general rule be followed in the instant case? The facts herein may be simply stated as follows:

The Bank, when it called upon Firestone to pay to it the money the Bank advanced on the false invoices, said in effect:

"We have in our possession certain accounts receivable assigned to us by our customer, Stan Wood, to whom we have advanced money on the strength of such assigned accounts; you (Firestone) owe such accounts for goods shipped to you by Stan Wood; you will therefore pay us and not Stan Wood."

Firestone as is the custom in such business transactions, replied in effect, "we herewith pay, as requested by you, these accounts for the goods which Stan Wood has shipped to us." There were no goods shipped, a fraud had been perpetrated by Stan Wood upon both the Bank and Firestone. In such a situation, who should bear the loss?

The Bank did not have any valid pledged security for the loan it made to Stan Wood, although it did not at the time it made such loan know that fact. Firestone paid the loan only because it thought the Bank had a valid pledged security. The Bank, by requesting that payment of these invoices be made to it, impliedly, although innocently, represented to Firestone that it held, by assignment from Stan Wood, a valid obligation of Firestone, whereas in truth, and in fact, such obligation was false, fictitious and fraudulent. The Bank lost

no rights against Stan Wood, for all it had was the promise of Stan Wood to pay the loan.

The money received by the Bank in payment of assigned invoices 1867 and 1876 was made for and in behalf of Firestone, under an honest mistake as to a material fact, upon which fact both parties were innocently but mistakenly acting.

Under such circumstances, the general rule should be applied—which, so far as the facts of the instant case are concerned, may be stated as follows:

Where money is loaned by a bank to a manufacturer who secured such loan by an assignment of false accounts receivable, purporting to represent claims for goods sold and delivered by such manufacturer to a buyer (which goods in truth and fact were not delivered) and the buyer upon the request of the manufacturer and the bank, gives money to the bank in payment of the assigned false and fraudulent invoices, such buyer may recover from the bank the money so paid on the theory of unjust enrichment. As between two innocent parties, where the evidence indicates that payment was made by one to the other upon the innocent implied representation of the one that he holds a valid assignment of a valid claim against the other, the one who impliedly represents the validity of an invalid claim cannot retain payment made by another who acts upon such implied representation.

We therefore determine that:

1. Firestone, by filing its claim in bankruptcy, is not precluded from pursuing its present action against the Bank.

2. The Bank is a holder in due course of the Firestone check in the amount of $6831.00 given to Stan Wood in payment of invoice No. 1868.

3. Firestone is entitled to recover from the Bank the sum of $19,148.66 received by the Bank in payment of assigned accounts numbered 1867 and 1876.

We have examined all other claimed errors and find none prejudicial.

The judgment is affirmed in part and reversed in part and as modified in accord with this opinion, final judgment is awarded the appellant Firestone.

DOYLE, J, NICHOLS, J, concur.